USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/16/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
:
UNITED STATES OF AMERICA        :
:
Plaintiff,                      :
:                 07 Civ. 6224 (SHS)
-against-                       :                 OPINION AND ORDER
:
$9,781.41 FORMERLY ON DEPOSIT AT MAN    :
FINANCIAL INC., IN ACCOUNT NUMBER       :
xxxxx5358, HELD IN THE NAME OF NARESH   :
KUMAR JAIN;                             :
:
$684,942.00 FORMERLY ON DEPOSIT AT      :
MAN FINANCIAL INC., IN ACCOUNT NUMBER   :
XXXXX4277, HELD IN THE NAME OF NARESH   :
KUMAR JAIN;                             :
:
$768,870.32 FORMERLY ON DEPOSIT AT      :
MAN FINANCIAL INC., IN ACCOUNT NUMBER   :
XXXXX8565, HELD IN THE NAME OF NARESH   :
KUMAR JAIN;                             :
:
$487,161.00 FORMERLY ON DEPOSIT AT      :
MAN FINANCIAL INC., IN ACCOUNT NUMBER   :
XXXXX8617, HELD IN THE NAME OF KANTA    :
NATH JAIN;                              :
:
$793,461.07 FORMERLY ON DEPOSIT AT      :
MAN FINANCIAL INC., IN ACCOUNT NUMBER   :
XXXXX8616, HELD IN THE NAME OF HAINKE   :
& ANDERSON TRADING LLC;                 :
:
$171,610.38 FORMERLY ON DEPOSIT AT      :
MAN FINANCIAL INC., IN ACCOUNT NUMBER   :
XXXXX8567, HELD IN THE NAME OF HAINKE   :
& ANDERSON TRADING LLC;                 :
:
$1,064,747.89 FORMERLY ON DEPOSIT AT    :
MAN FINANCIAL INC., IN ACCOUNT NUMBER   :
XXXXX8572, HELD IN THE NAME OF JAYNA    :
TRADING CO.;                            :
:
$128,341.00 FORMERLY ON DEPOSIT AT      :

MAN FINANCIAL INC., IN ACCOUNT NUMBER  :
XXXXX8610, HELD IN THE NAME OF JAYNA   :
KUMAR JAIN;                             :
                                        :
$209,102.50 FORMERLY ON DEPOSIT AT      :
MAN FINANCIAL INC., IN ACCOUNT NUMBER  :
XXXXX8611, HELD IN THE NAME OF JAYNA   :
TRADING CO.;                            :
                                        :
$13,415.18 FORMERLY ON DEPOSIT AT       :
MAN FINANCIAL INC., IN ACCOUNT NUMBER  :
XXXXX8556, HELD IN THE NAME OF NITIN   :
JAIN;                                   :
                                        :
$14,026.08 FORMERLY ON DEPOSIT AT       :
MAN FINANCIAL INC., IN ACCOUNT NUMBER  :
XXXXX4225, HELD IN THE NAME OF NITIN   :
JAIN;                                   :
                                        :
$2,748.00 FORMERLY ON DEPOSIT AT        :
MAN FINANCIAL INC., IN ACCOUNT NUMBER  :
XXXXX8557, HELD IN THE NAME OF PANKAJ  :
JAIN;                                   :
                                        :
$24,449.65 FORMERLY ON DEPOSIT AT       :
MAN FINANCIAL INC., IN ACCOUNT NUMBER  :
XXXXX8558, HELD IN THE NAME OF PANKAJ  :
JAIN;                                   :
                                        :
                    Defendants-in-rem.  :
------------------------------------------------------------------ x

SIDNEY H. STEIN, U.S. District Judge.

Almost two years after it began this litigation, the United States seeks sanctions against claimants Kanta Nath Jain; Naresh Kumar Jain; Pankaj Jain; Hainke & Anderson Trading, LLC; and Janya Trading Co., dismissal of their claims, and entry of judgment in the government's favor pursuant to Fed. R. Civ. P. 16(f)(1)(C) and 37(b)(2). The government has pursued its claims diligently and this Court has extended claimants every opportunity to comply with the Court's discovery orders. In light of claimants' continued refusal to comply with—or to offer

good faith explanations for why they cannot comply with—this Court's repeated orders to respond to the government's discovery requests, the Court grants the government's motion for sanctions, dismisses claimants' claims in this action, strikes claimants' answers, and enters judgment in favor of the United States against the defendant-in-rem funds.

I.  **BACKGROUND**

   A.  The Pleadings and Discovery Requests

On May 18, 2007, in conjunction with an international investigation into narcotics distribution and associated money laundering, the United States seized the defendant funds from bank accounts held at Man Financial Inc. in New York, NY. The government initiated this action shortly thereafter, alleging that these funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in money laundering transactions; pursuant to 18 U.S.C. § 981(a)(1)(B) as property that constitutes, derives from, or is traceable to proceeds obtained from an offense against a foreign nation involving the manufacture, sale, import, or distribution of controlled substances; and pursuant to 21 U.S.C. § 881(a)(6) as monies furnished in exchange for or proceeds traceable to a controlled substance. In its complaint, the government alleges that Kanta Nath Jain and Pankaj Jain were among those arrested by authorities in Dubai, where they reside, in February 2007, and are the subjects of an ongoing investigation there. (Compl. ¶¶ 11-12.) Claimants Kanta Nath Jain, Naresh Kumar Jain, and Pankaj Jain contacted the Court by letters dated July 31, 2007, contesting the government's allegations and seeking additional time to file responsive claims. The Court twice extended their time to answer and file claims to December 2007, which they still failed to do. (*See* Orders dated Aug. 20, 2007; Oct. 31, 2007.)

The United States moved for a default judgment on January 10, 2008 and the Court granted claimants additional time, until August 2008, to respond. (*See* Orders dated Feb. 4,

3

2008; March 7, 2008; June 13, 2008; July 11, 2008; July 28, 2008.) Ultimately, the Court dismissed the motion as moot, as counsel for claimants filed a notice of appearance before this Court in April 2008. (*See* Order dated July 29, 2008.) Claimants finally filed claims for the seized assets and answers to the government's complaint on August 4, 2008, thirteen months after the commencement of this action.

### B. The Order to Compel

The parties stipulated to a discovery plan that the Court endorsed on October 10, 2008. However, claimants proceeded to object—but not respond—to the government's document requests, interrogatories, and deposition notices. The government then moved to compel claimants to respond to its discovery requests, to which claimants responded only insofar as they opposed the motion. The Court entered an Order to Compel on February 27, 2009, directing that by April 13, 2009, each claimant must answer all interrogatories, produce documents in response to the government's requests, designate individuals to testify on behalf of organizational claimants, identify dates on which individuals would be available for deposition, and consent to deposition in the country of residence, if necessary.[1] (Order dated Feb. 27, 2009 at 4-6.) In addition, the Court overruled claimants' objections to the document requests and interrogatories and warned that "[n]o Claimant may refuse to respond to these interrogatories on any basis other than attorney-client privilege or other applicable privilege." (*Id.* at 4.) Finally, the Court directed that "[a]ny claimant who fails to comply with any part of this Order will be sanctioned, which may include all appropriate sanctions under Rule 37, including but not limited to adverse factual findings, monetary sanctions, contempt, the striking of pleadings, or judgment for the government." (*Id.* at 6.)

---

[1] Claimants' counsel informed the Court during a January 23, 2009 conference that authorities in Dubai have seized claimants' passports as part of their ongoing investigation, thus preventing claimants from leaving the United Arab Emirates. (*See* Dec. of Jeff Alberts dated Jan. 30, 2009 ¶ 26.)

Having received no discovery materials in response to the Court's Order to Compel, the government filed this motion for sanctions on May 1, 2009, seeking the dismissal of claimants' claims and entry of judgment in its favor. Claimants filed a memorandum of law opposing the motion for sanctions and appended their responses to the government's interrogatories and a letter describing their production of 34 documents to the government, which claimants' counsel provided to the Court at a conference on May 28, 2009.

In their response, claimants state that many of the categories of documents requested were seized by the authorities investigating them in Dubai and some are in the possession of Man Financial, the New York bank in whose accounts the seized funds were located. (Letter from Scott Splittgerber to Jeffrey Alberts dated May 15, 2009 ("Splittgerber Letter"), Ex. B to Dec. of Scott J. Splittgerber, dated May 15, 2009 ("Splittgerber Dec."); Compl. ¶¶ 17-19.) Claimants also continue to assert that some document requests are overly broad, despite this Court's explicit rejection of this argument in its Order to Compel, based on claimants' prior complete failure to respond. Specifically, in response to a request that sought, inter alia, "[a]ll documents and things concerning or referring to" the several accounts from which funds were seized and the origin of those funds, the investigation and arrest of claimants, and claimants' tax and travel records, claimants produced a total of 34 pages, including (1) a report in Arabic that—according to claimants' counsel's representation to the Court—describes the charges filed against claimants by authorities in Dubai, (2) an additional document in Arabic that details the amount of funds seized, (3) a document provided by banking authorities in the United Arab Emirates in English that analyzes transactions associated with various claimants, (4) a press release issued by the U.S. Attorney's office in the Southern District of New York announcing the seizure of claimants' funds, and (5) a single page providing a partial response to document request number 16, which

sought "[a]ll corporate structure charts, employee listings, business plans, and lists of Board members, for the Corporate Claimants." (*See* Dec. of Jeff Alberts dated Jan. 30, 2009 ("Alberts Dec."), Ex. 11 at ¶ 16.)

In response to the government's interrogatories to each claimant, claimants provide a single, collective answer, each page of which is signed by Kanta Nath Jain, Naresh Kumar Jain, and Pankaj Jain.[2] This response includes objections that the Court overruled in its Motion to Compel and explains that claimants cannot travel to New York City for deposition because their passports have been seized, they do not know the names of government agents involved in their arrests, the Dubai authorities seized all of their relevant records, and they cannot provide details of transactions and relationships without the seized records. (*See* Response of Naresh Kumar Jain to Plaintiff's Local Civil Rule 33(A) Interrogatories at 5-7, Ex. E to the Splittgerber Dec.) Claimants also provide a set of tables listing funds transferred between accounts belonging to different claimants, but they do not provide any underlying documentation.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 37 provides courts with authority both to compel discovery and to sanction a party for disobeying discovery orders. Pursuant to this authority, courts may "strik[e] pleadings in whole or in part; . . . dismiss[] the action or proceeding in whole or in part; . . . [and] render[] a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(a). Rule 16(f)(1)(c) reiterates this sanctioning authority when a party "fails to obey a scheduling or other pretrial order." Rule 37 sanctions are available in civil forfeiture actions. *See U.S. v. U.S. Currency in Amount of Six Hundred Thousand Three Hundred and*

---

[2] Claimant Janya Trading Co. has designated Kanta Nath Jain as its representative for purposes of depositions pursuant to Fed. R. Civ. P. 30(b)(6) and claimants' counsel represented at the May 28, 2009 conference that Kanta Nath Jain signed the interrogatories in both his individual and representative capacities. Similarly, claimant Hainke & Anderson Trading, LLC designated Pankaj Jain as it representative, and claimants' counsel represented that he, too, signed the interrogatories in both his individual and representative capacities. (*See* Splittgerber Letter at 2.)

6

*Forty One Dollars and No Cents ($600,341.00) in U.S. Currency*, 240 F.R.D. 59, 63 n.6 (E.D.N.Y. 2007); *U.S. v. One 1987 BMW 325*, 985 F.2d 655, 660 (1st Cir. 1992); *c.f. United States v. 20 Cases, Etc., of Jell-O*, 77 F.Supp. 231, 231 (S.D.N.Y. 1947).

While "district courts enjoy wide discretion in sanctioning litigants appearing before them," *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 177 (2d Cir. 2008), they should impose a sanction of dismissal only if the party's failure to comply resulted from "willfulness, bad faith, or any fault." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d. 130, 135 (2d Cir. 2007); *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 207 (1958). The Second Circuit has identified factors that "may be useful in evaluating a district court's exercise of discretion to dismiss an action under Rule 37," including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (quotation and citation omitted).

### III. ANALYSIS

Claimants' violation of this Court's discovery orders has been both willful and longstanding. The Court first endorsed the parties' joint discovery proposal in October 2008, after allowing claimants more than one year to respond to the government's Complaint in Forfeiture. At the time it adopted the proposed discovery order, the Court warned the parties that the deadlines contained in that order "will not be extended except for good cause relating to other governments." (Order dated Oct. 10, 2008 at 3.) Until the government moved for sanctions, claimants responded to discovery requests only to the extent of objecting—first to the requests themselves and then to oppose the government's motion to compel. Claimants have known of

the government's claim for forfeiture for almost two years and have been represented by counsel before this Court for more than one year. (*See* Alberts Dec. ¶ 4; Order dated July 29, 2008.)

During this time, their counsel has repeatedly represented to the Court that his ability to communicate with claimants has been limited and has only been via another attorney. (*See, e.g.*, Claimants' Br. in Opp. to Mot. to Compel dated Feb. 13, 2009 at 6-7; Claimants' Br. in Opp. to Mot. to for Sanctions dated May 15, 2009 at 5; Alberts Dec. ¶¶ 16, 20, 26.) This does not change the fact that claimants' repeated failures to comply with orders that warned them of the sanctions that would result from noncompliance implicate three of the four factors set forth in *Agiwal*—claimants have been willful and sustained in their refusal to engage in discovery in the face of repeated warnings. *See Agiwal*, 555 F.3d at 302; *see also Davis v. Artuz*, No. 96 Civ. 7699, 2001 WL 50887, at *3 (S.D.N.Y. Jan. 19, 2001) ("Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control."); *Ashkinazi v. Sapir*, 02 Civ. 2, 2005 WL 545205, at *5 (S.D.N.Y. March 8, 2005) ("[A]n extended pattern of discovery failings or misconduct plainly will justify [dismissal or preclusion], absent a compelling justification for the errant party's conduct.").

Only in the face of sanctions, including dismissal and a default judgment of forfeiture, did claimants provide any substantive responses whatsoever to the interrogatories, document requests, and deposition notices served on them in October 2008, and those substantive responses were woefully inadequate. As set forth on the record during the May 28, 2009 conference, this response would have been clearly insufficient to comply with the Court's Order to Compel even if it had been timely, as it provides meager and collective answers without any detailed explanation for why claimants did not—or could not—produce the information sought.

While claimants state that many of the relevant documents are in the custody of authorities in Dubai, they provide no details explaining how they lost custody of all of their financial, tax, and travel documents, and in fact do not rely on this argument in their brief opposing the motion for sanctions. (*See* Claimants' Br. in Opp. to Mot. to for Sanctions dated May 15, 2009 at 5 (claimants' delay resulted from "unfamiliarity with legal practice in the United States" and "varying degrees of proficiency in English" rather than willfulness or bad faith).[3]) The limited answers that claimants do provide to interrogatories suggest underlying information that they have not produced to the government; they include tables that summarize dozens of transfers of money between claimants' accounts, but do not include a single account statement or other original document. (*See* Response of Naresh Kumar Jain to Plaintiff's Local Civil Rule 33(A) Interrogatories, Ex. E to the Splittgerber Dec.)

Claimants in this case have been afforded more process than is due under the Federal Rules of Civil Procedure. Taken together, claimants' intransigence in the face of this Court's clear and repeated orders and their failure to provide either the requested discovery or a detailed explanation of why specific documents are outside of their control constitute willful noncompliance with this Court's orders, and particularly with its Order to Compel. In light of claimants' refusal to participate in this litigation as required by the Federal Rules of Civil Procedure, the Court does not believe that lesser sanctions would either improve claimants' compliance or serve the purposes of Rule 37. *See Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) ("Disciplinary sanctions under Rule 37 are intended to . . . ensure that

---

[3] Claimants' additional asserted grounds for delay—their lack of familiarity with legal practice in the United States and their variable proficiency in English—are also unavailing. They have been represented by New York counsel admitted to this Court for over one year and their written communications with this Court, including those made prior to retaining counsel, have demonstrated perfectly competent command of the English language. *See, e.g.*, Letters from Naresh Kumar Jain, Pankaj Jain, and Kanta Nath Jain to Judge Sidney Stein, U.S. District Court, Southern District of New York, dated July 31, 2007, Dkt. Nos. 4, 5, 7; *see also Agiwal*, 555 F.3d at 303 (plaintiff's alleged problems with health and language "cannot excuse his repeated failures to comply with the [discovery] orders.").

a party will not benefit from its own failure to comply[,] . . . [act as] specific deterrents [that] seek to obtain compliance with the particular order issued[,] . . . [and] serve a general deterrent effect on the case at hand and on other litigation.").

## IV. CONCLUSION

Accordingly, the Court hereby orders claimants' answers to the Complaint in Forfeiture stricken pursuant to Fed. R. Civ. P. 37(b)(2)(a)(iii). Because claimants' answers have been stricken, the facts set forth in paragraphs 1 through 21 of the government's Complaint in Forfeiture are deemed admitted and established and final judgment by default is entered in favor of the United States and against claimants Kanta Nath Jain; Naresh Kumar Jain; Pankaj Jain; Hainke & Anderson Trading, LLC; and Janya Trading Co. pursuant to Fed. R. Civ. P. 37(b)(2)(a)(vi) as to all counts set forth in the government's Complaint in Forfeiture.

Dated: New York, New York
       June 16, 2009

SO ORDERED:

Sidney H. Stein, U.S.D.J.